(97 App. Div. 153.)

### GILLIES et al. v. ECKERSON.

(Supreme Court, Appellate Division, Second Department. July 28, 1904.)

1. ADJOINING LANDOWNERS—LATERAL SUPPORT.

An owner of land is entitled to restrain an adjoining landowner from making excavations in his land tending to deprive complainant's land of lateral support in its natural state.

2. SAME—CONTRIBUTING CAUSE.

Where complainant's act in digging on his own land tended to deprive it of its cohesive force and contribute to its fall on its being deprived of lateral support by defendant's excavations on his land, plaintiff was not entitled to recover of defendant for the damage so caused.

Appeal from Trial Term, Orange County.

¶ 1. See Adjoining Landowners, vol. 1, Cent. Dig. § 11.
    89 N.Y.S.—39

Action by James W. Gillies, individually, and said Gillies and others as executors of John W. Gillies, deceased, against J. Esler Eckerson, individually and as executor of the estate of James Eckerson, deceased. From a judgment in favor of defendant, plaintiffs appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOOD-WARD, JENKS, and HOOKER, JJ.

Arthur S. Tompkins, for appellants.
Henry Bacon and Ralph E. Prime, for respondent.

HOOKER, J. The plaintiff was the owner of land south of Jefferson street, in the village of Haverstraw, and the defendant owned a considerable tract of land north of that street. The soil in this vicinity, north and south for several miles and back from the Hudson river several hundred feet, is peculiarly adapted to the making of brick, and for upwards of 25 years the plaintiff and his predecessors in title have been engaged in digging away the surface of his land to procure materials therefor. The defendant has also been engaged in the same enterprise, and in the year 1895, owing to more extensive operations, had dug deeper into his premises than the plaintiff. This action was brought to recover damages resulting from the defendant's extensive excavations, by reason of which in each of the years 1895 and 1899 large quantities of clay and sand subsided or slid from plaintiff's land upon those of the defendant. The excavations and operations still continued, and an injunction was asked to restrain the defendant from further similar use of his lands. Defendant had dug up to the center of the 50-foot strip known as "Jefferson Street," which appears to have been long since abandoned as a public highway. The complaint was dismissed upon the merits, and plaintiffs appeal.

The court made this finding of fact:

"The subsiding and falling and slipping away aforesaid of soil on the lands of the plaintiffs, and the subsiding, falling, and slipping away of the soil mentioned in the complaint, were caused by or contributed to by the acts and excavations by the plaintiffs and of their predecessors in title on the lands owned as aforesaid by the plaintiffs, and by the acts and excavations of the plaintiffs on said strip of land called 'Jefferson Street.'"

The finding as to the contributing cause is supported by the evidence. The excavations of the plaintiff had not been such as to result in a mere depression of the whole surface of his lands. Their result was to leave the new exposure irregular in shape. Contiguous with the center of Jefferson street, to which point the defendants had brought their excavations, the plaintiff had left the surface of his ground so that its formation was wedge-like in shape, the evidence warranting the conclusion that the pyramid or wedge was some 200 feet in width and about 250 feet from apex to base. The physical condition, which resulted in the leaving of this pyramid, was that the plaintiff deprived that part of his land adjacent to his northern boundary at Jefferson street of the full measure of support by cohesion which it would have possessed had the lands been left in their original natural state, or had the excavation resulted in a practically level surface.

It seems to be settled that, so far as lateral support of the soil is concerned, in its natural state, without the burden of buildings upon it

the occupant of land may be protected by injunction against excavations tending to cause his land to subside or slide away. Trowbridge v. True, 52 Conn. 190, 52 Am. Rep. 579. "The natural right of support, as between the owners of contiguous lands, exists in respect of lands only, and not in respect of buildings or erections thereon. Panton v. Holland, 17 Johns. 92 [8 Am. Dec. 369]; Thurston v. Hancock, 12 Mass. 221 [7 Am. Dec. 57]; Humphrey v. Boyden, 12 Q. B. 139." Dorrity v. Rapp, 72 N. Y. 307. The doctrine laid down by Rolle that "a man who has his land next adjoining to my land cannot dig his land so near to my land that thereby my land shall fall into his pit, and for this, if an action were brought, it would lie" (2 Rol. Abr. Tres. 1), has been recognized in many cases and especially, in this jurisdiction, in Lasala v. Holbrook, 4 Paige, 169, 25 Am. Dec. 524, Hay v. The Cohoes Company, 2 N. Y. 159, 51 Am. Dec. 279, and Farrand v. Marshall, 21 Barb. 409. The reason this rule does not protect buildings erected on the confines of the land is that one who constructs them ought to foresee the probable use by his neighbor of the adjoining land, and by agreement, or the erection of his buildings elsewhere, secure himself against future interruption and inconvenience. Thurston v. Hancock, supra; Farrand v. Marshall, supra. The doctrine underlying this rule is that the burden of support attaching to surrounding land is limited to the condition of the surface in its natural state unincumbered by the weight of buildings; or, in other words, if one shall treat his own land by superimposing upon it unnatural weight, or taking away from it cohesive support, or in any other manner contribute to its insolidity, he may not maintain an action against his neighbor whose digging causes the land to slip into the pit, unless the slide would not have resulted in the absence of alterations in the natural surface of the ground. In this case the court has found that plaintiff's acts contributed to the subsiding of his ground and its being carried into the defendant's pit, and from a review of the evidence it seems quite clear to us that the cohesive force of which it was deprived by the removal of lands to the southeast might well have contributed to the result. If the plaintiff wished to retain his natural right of lateral support, he should have anticipated the consequences of defendant's digging by leaving to that portion of his land at his north line all of its own natural support from his side. The act of depriving it of its support should be followed logically by the same legal consequences as if he had erected a building close to his north line. In that event the defendant, in the absence of negligence, would not have been liable for the injury if the excavations would not have harmed the adjacent lot in its natural state. Lasala v. Holbrook, supra.

The views we have expressed render it unnecessary to discuss the legal questions said to be involved by reason of the 50-foot strip, known as "Jefferson Street," intervening between the lands of the parties, and the questions of ownership therein presented by the record.

The judgment should be affirmed, with costs. All concur.